# MILO WINCHELL *et al.*

## *v.*

# CARRIE EDWARDS *et al.*

| 57 | 41 |
|---|---|
| 157 | 254 |
| 57 | 41 |
| 61a | 633 |
| 57 | 41 |
| 65a | 311 |
| 57 | 41 |
| 167 | 144 |
| 167 | 547 |

1. MORTGAGE—*foreclosure—scire facias.* It is legal and proper for the mortgagee to foreclose a mortgage by *scire facias* for the use of another person. And such a judgment is valid and conclusive upon parties, and privies, the latter being of three kinds—by blood, in law and by estate. The heirs of a defendant to such a proceeding are privies, and concluded by the judgment.

2. SALE ON EXECUTION—*en masse—may be set aside—when.* Although the execution is valid, and both the judgment and execution properly described the land, the irregularity in selling *en masse,* instead of in parcels, gives the defendant a right to have the sale set aside, and so with other irregularities, but the right may be lost by *laches.*

3. SAME—*acquiescence in.* Where a defendant was present at the sale, and cognizant of the judgment, and manner in which the sale was conducted, and remaining in the country for nearly a year after the time for redemp tion had expired, and taking no steps to set the sale aside, and then leaving for California, there arises a strong presumption of acquiescence, and his heirs can be in no better position.

4. SAME—*description of the premises.* The description of the premises ordered to be sold by the judgment and execution, was, lot 2, block 51 in school section addition to Chicago. The lot was levied on as thus described, and is the same in the sheriff's deed, with these additional words, "except 59 feet off the west end" sold to McGraw, of which he was then in the occupancy: *Held,* that even if this exception was uncertain and void, still that is no ground for setting aside the sale, as it is a matter by which McGraw or his grantee alone could be affected.

5. EVIDENCE—*destruction of by parties.* Where a party is proved to have suppressed any species of evidence, or to have destroyed or defaced any written instrument, a presumption arises that had the truth appeared it would have been against his interest, and the fabrication of evidence raises a presumption against the party doing so, no less than when evidence has been suppressed or witheld.

6. ESTOPPEL—*title—equity.* When a party assists another in the sale of property, the legal title to which is in the seller, and recommends the title as being good in the vendor, such party thus assisting the sale will not be permitted to set up a secret equitable title in himself against such purchaser thus induced to buy and pay for the property.

APPEAL from the Superior Court of Chicago.

The general subject matter of this controversy is, lot No. two, block fifty-one, School Section Addition to Chicago, situate upon the corner of Canal and Adams streets in said city, and being about sixty-four feet upon Canal and one hundred feet upon Adams street. The particular subject matter is the south thirty-three feet, of the sixty-four fronting upon Canal.

It appears that on the first of April, 1844, John M. Edwards and Edwin Edwards, being seized in fee of said lot two, borrowed three hundred dollars of one Slocum, for which they gave their note payable in three years, with interest at the rate of twelve per cent per annum, and a mortgage upon said lot two, which was duly executed and filed for record the same day.

On the 28th of June, 1844, J. M. and Edwin Edwards conveyed said south thirty-three feet to one Wilcox, who, on the 30th of September, 1845, reconveyed the same to John M. Edwards. In January, 1845, J. M. and E. Edwards sold and conveyed, for the consideration of two hundred dollars, fifty-nine feet on Adams street, and off the west end of said lot two, to one Henry McGraw, who soon after took possession, built upon and occupied the same. That parcel was released from the mortgage. That on the 2d of December, 1847, John M. and wife conveyed to Edwin Edwards the undivided half of the north half of said lot two; that on the 2d of December, 1847, said John M. and wife, by warranty deed, for the consideration of three hundred and fifty dollars, conveyed to Charles M. Edwards the south thirty-three feet in question, subject to the Slocum mortgage, but which deed Charles M. testifies was only as security. On the 19th of October, 1848, Slocum, by an assignment under seal, and reciting the consideration of two hundred and thirty-six dollars, assigned, transferred, and set over the Edwards mortgage to him, to Milo Winchell, and also endorsed the note to him. On the 3d of

November, 1848, a writ of *scire facias* was sued out of the Cook county circuit court, in the name of Slocum for the use of Winchell, to foreclose said mortgage. John M. and Edwin Edwards were parties defendant. It was served on them on the 8th, and, making no defence, their default and judgment were entered on the 22d of the same month, for four hundred and sixty-seven dollars and costs; the premises ordered to be sold, and execution to issue. On the 7th of December, 1848, the execution was issued, and on December 11th levy made. On the 11th of April, 1849, the premises were sold under the execution, and bid in by Winchell for the amount of the judgment.

The sheriff issued the certificate of sale to Winchell, describing the premises as lot two, block fifty-one, School Section Addition to Chicago, except fifty-nine feet on Adams street. The premises not having been redeemed within the fifteen months, the sheriff, on the 12th of October, 1850, executed a deed to Winchell.

It appears that John M. Edwards was present at the sale, and fully cognizant of all the proceedings. Without taking any steps to question their regularity, he left in the early part of December, 1851, to go to California, and his family quit possession. On the 26th of November, 1851, Winchell leased the south half of the house on said lot two to appellant Doolittle, who soon after went into possession, and on the 7th of June, 1852, Winchell sold, and by deed executed by him and wife, conveyed the south thirty-three feet to Doolittle for the consideration of five hundred dollars, he paying three hundred dollars cash, and giving his note for two hundred dollars, payable in one year, which was paid.

It was stipulated by appellants' counsel, in the court below, that John M. Edwards died in February, 1852. It appears that at the time of his death, appellees were small children, and are his only heirs at law. This bill was filed by them November 21st, 1867, alleging that the money advanced by Winchell to Slocum, to procure the assignment of the mortgage, was a mere

loan by Winchell to J. M. and Edwin Edwards, and that he took the assignment of the mortgage and the legal title under the foreclosure, as security for the money so advanced; that they had previously paid Slocum two hundred dollars on the note, which was not endorsed, and that the amount actually due was only about one hundred and sixty dollars; that on December 1st, 1851, John M. Edwards, being about to leave this State for California, paid to Winchell the sum of one hundred and fifty dollars, in full for the amount due him under said mortgage to said Slocum, for that part of the said premises which had been conveyed to him in security, and that on that occasion Winchell gave to said Edwards a receipt to that effect, which receipt is now ready to be produced and proved as the court shall direct, and a copy whereof is as follows, namely:

"CHICAGO, Dec. 1st, 1851.,

"Received of John M. Edwards one hundred and fifty dollars for his half of the mortgage which I hold of that part of lot two, block fifty-one, School Section Addition to Chicago, bounded as follows: Beginning at southeast corner of said lot and running west one hundred feet, thence north thirty-three feet, thence east one hundred feet, thence south thirty-three feet to the place of beginning.

"MILO WINCHELL."

The bill then alleges that thereafter Winchell merely held the title to said premises in trust for John M. Edwards, and that he thereafter fraudulently sold and conveyed them to Doolittle, to defraud complainants, for the pretended consideration of five hundred dollars, which was not in fact paid, and that Doolittle had notice of the matters alleged.

The bill then alleges, that if Winchell did not loan the money and take the title as security, then, that the sale and proceedings should be set aside, for want of proper notice by the sheriff, for misdescription of the property, and because it was not sold in parcels.

The appellants answered separately and fully; Winchell denying the loan, or taking the assignment of mortgage, or the title under the sale, as security or in trust; avers that he paid the consideration out of his own funds and for his own benefit; denies that J. M. Edwards ever paid him the one hundred and fifty dollars, or any part of it, as alleged, or that he (Winchell) ever executed the receipt set out in the bill, or authorized any one to execute it for him; sets up the sale made to Doolittle as made upon a good and valuable consideration paid, and that Doolittle was advised by J. M. Edwards to make the purchase, and that it was made without any notice of any adverse rights; also *laches.*

Doolittle makes a similar answer, setting up the defense of *bona fide* purchaser without notice; equitable estoppel, by reason of J. M. Edwards advising him to purchase, and representing that the title in Winchell was good; sets up possession from June 7th, 1852, and from thenceforth, and payment of all taxes under claim and color of title.

Replication was filed and proofs taken.

The court below heard the case upon the pleadings and proofs, and decreed that appellees had a right to redeem from the mortgage sale; that an account be taken, redemption and conveyance to be made. From which decree an appeal was taken to this court.

Messrs. FULLER & SMITH, for the appellants.

Mr. W. T. BURGESS, for the appellees.

Mr. JUSTICE McALLISTER delivered the opinion of the Court:

The foreclosure of the mortgage by *scire facias,* in the name of Slocum, the mortgagee, for the use of Winchell, was legal and proper. *Camp* v. *Small,* 44 Ill. 37.

The judgment was, therefore, valid and conclusive, not only upon the parties, but also upon all persons in privity

46          WINCHELL *et al. v.* EDWARDS *et al.*          [Sept. T.,

Opinion of the Court.

with them.    Such privity is of three kinds—by blood, in law, and by estate.

Appellees being heirs at law of John M. Edwards, one of the defendants in that judgment, they are privies, and concluded by it.

The execution issued upon the judgment was in due form and valid.    In both the judgment and execution the premises were properly described.    The irregularity of selling *en masse* instead of by parcels, is one which might have given the defendants in the execution the right to have the sale set aside, if they had taken any steps to do so.    So with other irregularities of that character.    But the right is one which may be lost by *laches.*    *Walker* v. *Schum,* 42 Ill. 462 ;    *Fergus* v. *Woodworth,* 44 Ill. 377.

James M. Edwards, the father of appellees, was present at the sale, and there is sufficient evidence that he was cognizant of the judgment, the sale and the manner of conducting it, and from the fact of such knowledge, and the fact of his taking no steps to question the propriety of the sale, from the time it was made until upwards of a year after the time of redemption had expired, and then leaving for California, as may be inferred, with the expectation of surrendering possession to Winchell, who had already leased his part to Doolittle, raises such a presumption of acquiescence on his part as would have precluded him from setting it aside.    If he was thus precluded, as a matter of course, the appellees, his heirs at law, are in no better situation.

The description of the premises ordered to be sold by the judgment and in the execution, was "Lot No. two (2), in block No. fifty-one (51), in the School Section Addition to Chicago."    The lot was levied upon as thus described.    It is the same in the sheriff's deed, with these words thrown in: "Except fifty-nine feet on Adams street."    That exception was made, no doubt, on account of the fifty-nine feet off the west end sold to McGraw, of which he was then in the occupation.

Conceding the exception to be uncertain, and for that reason void, still that is no ground for setting aside the sale in this case. It is a matter by which McGraw or his grantee alone could be affected.

The other aspect of this case, as presented by the bill, is, in substance, that Winchell advanced the money to Slocum upon the mortgage, for and as a loan to John M. and Edwin Edwards, under an agreement with them that he was to do so, take the assignment of the mortgage to him absolutely, foreclose it and bid in the premises, take the title and hold it as a security for the amount advanced ; that when they, or either of them paid him, then he was to deed over to each his share of the property in severalty ; that before this, John M. had become the owner, in severalty, of the south thirty-three feet. That in pursuance of this arrangement they did not redeem from the sheriff's sale, but that on or about the 1st of December, 1851, John M. paid Winchell one hundred and fifty dollars in full of the amount due him under said mortgage to Slocum, for that part of the premises which had been conveyed to said J. M. Edwards in severalty, and on that occasion Winchell gave him the receipt set out in the bill ; that after giving the receipt, Winchell merely held said piece of land in trust for J. M. Edwards, and those claiming under him.

We have examined the evidence under this branch of the case, with all the care demanded by the peculiar duties which the law imposes upon the court of chancery with reference to the rights and interests of infants, and are clearly of opinion that it does not sustain the bill. Edwin Edwards and Francis Edwards, brothers of the late John M. Edwards, were introduced as witnesses to prove the agreement between Winchell, John M. and Edwin Edwards. The latter testified that the agreement was, that Winchell should re-convey the property to their wives. Francis testified that Winchell was to hold the property until he could make the most out of it, for the benefit of witnesses' brothers, John, Edwin and

himself and their families.   Edwin and John M. were both in embarrassed circumstances at the time, the former having a judgment against him of upwards of $3000.   Edwin had given, in 1863, a statement under oath that Winchell held the property for the benefit of the creditors of John M. Edwards, of whom Francis Edwards was preferred.   Charles M. Edwards, another brother, is introduced, and he testified that he had been the custodian of the alleged receipt for the one hundred and fifty dollars, claimed to have been paid by John M. Edwards to Winchell on the 1st of December, 1851; that John M. gave it to him to keep, just before the former started for California.   This receipt, purporting to have been given by Winchell, was not only proved to have been a forgery, but the counsel for appellees admits that its execution was not proven, and that it probably was not executed by Winchell.

These brothers all appear to have testified under feelings of bitter hostility to Winchell, who is their brother-in-law. They were examined, on the part of appellees, generally in a very unfair manner, by leading questions suggesting the very answers desired, and upon vital parts of the case.   They were called upon to give their conclusions from conversations which they evidently had never heard, or had forgotten, and in many instances to state what they had heard from third persons.   To unsettle titles upon such evidence would be extremely dangerous.

And while we acquit the appellees of any participation in what we deem, under all the evidence, to be a most foul conspiracy against one of the appellants, yet, from what we can see as to the active management of this case, the fabrication of evidence of the payment of the one hundred and fifty dollars alleged to have been paid by John M. Edwards, when all the circumstances tend to disprove the fact of such payment, raises a strong presumption against those who appear to be real parties to the suit, which must affect the case of the appellees, however innocent they may be.   " When a person is proved to have suppressed any species of evidence, or to

have defaced or destroyed any written instrument, a presumption will arise, that if the truth had appeared it would have been against his interest, and that his conduct is attributable to his knowledge of the circumstances. The general rule is, "*omnia presumunter contra spoliatorum.*"

"The fabrication of evidence is calculated to raise a presumption against the party who has recourse to such practice, not less than when evidence has been suppressed or withheld." 1 *Phil. Ev.* (4th Am. ed.) 639.

We are fully satisfied that Doolittle was a *bona fide* purchaser without notice. Indeed, he seems to have purchased upon the advice and recommendation of both John M. and Edwin Edwards that Winchell's title was good. It is unnecessary to cite authorities to the effect, that if a party assist in making a sale of real estate, the legal title to which is in another, by recommending the title of the latter to be good, and thus induce the purchase, such party will not be permitted afterwards to set up a secret equitable title in himself, against such purchaser thus induced to buy and pay for the property.

The evidence shows that Winchell took possession of the premises under claim and color of title, before the death of John M. Edwards, and that he, and Doolittle, who holds under the same title, have paid all taxes upon the property, from and including the year 1851 to the time of filing this bill in 1867.

It is true, the answer is not so framed as to properly set up this defense, and we lay no stress upon it.

The court below should have dismissed the bill on the ground that it was not sustained by the evidence. Its decree is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Decree reversed.*