Tanton v. Keller.

## T. O. Tanton, Executor of John Tanton, deceased, v. Mary E. Keller et al.

1. WILLS—*Ademption of Legacies.*—Where a legacy is given to a legatee to pay to him the debt of another legatee in the will, and after the execution of the will the testator himself pays the debt, there will be an ademption of the legacy.

2. EVIDENCE—*Destruction of—Inference from.*—The fact that a party litigant in possession of documentary evidence destroys the same, so that it can not be used as evidence, is a circumstance sufficient to throw suspicion upon his case and may be taken into consideration by the court and given such weight as it deserves.

3. WITNESS—*What Interest Does Not Incapacitate.*—A daughter of a testator is not an incompetent witness upon the question of the ademption of a legacy to her brother in her father's will, where the legacy, if adeemed, would go to her children under the will.

**Exceptions to an Executor's Report.**—Appeal from the Circuit Court of Woodford County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed December 10, 1895.

*Obligation of Mary E. Keller referred to in the will:*
Agreement read in evidence against objection and exception of appellant, as follows :

Know all men by these presents, that whereas Jacob M. Keller, of Green township, Woodford county, State of Illinois, is justly indebted to T. O. Tanton, of Cazenovia township, Woodford county, State of Illinois, to the amount of nine hundred and twenty-nine and thirty-one hundredths dollars and interest on the same at eight per cent since October 8, 1886, amounting to forty-nine and nineteen hundredths dollars, making the amount of nine hundred and seventy-eight and fifty hundredths dollars, for which T. O. Tanton holds the note of the said Jacob

M. Keller, dated October 8, 1886; and said Jacob M. Keller is also indebted to said T. O. Tanton to the amount of fourteen hundred and twenty-two and twenty-eight hundredths dollars paid to G. W. Corwin, of Green township, Woodford county, State of Illinois, in full settlement of a bond given by said Jacob M. Keller as treasurer of highway commissioners of said Green township (see receipt dated May 7, 1887, given by said G. W. Corwin). Now, therefore, I, Mary E. Keller, of Green township, Woodford county, State of Illinois, wife of said Jacob M. Keller, do hereby promise, covenant and bind myself, heirs, executors and assigns, to pay to the said T. O. Tanton, his heirs, executors or assigns, out of the first money, rents or profits which I receive as heir of John Tanton, of El Paso township, Woodford county, State of Illinois, the just and full sum of twenty-four hundred and nine and thirty-three hundredths dollars (interest on money paid Corwin included in the above amount), with interest at eight per cent, and if the interest is not paid each year, to become principal and draw interest the same as the original principal.                                    M. E. KELLER. [Seal.]

June 6, 1887.

*Item eight in the credits of the executor's report :*

"1893, Jan. 4.    Paid on M. E. Keller agreement as per will, $1,920.13," being the item to which objection was sustained by the County and Circuit Courts.    Report filed January 16, 1894.

Objections of complainants to the executor's report in question.

*Objection to the eighth item of the report :*

That the eighth item of credits aforesaid claimed by said executor should be wholly disallowed for the reason that as these respondents are credibly informed and allege to be true, the agreement mentioned in said item eighth, and the vouchers filed in support thereof, was settled with and paid to T. O. Tanton and fully discharged by the said John Tanton after the making of the said will, but within his lifetime, which payment and discharge of the said agreement was made by the said John Tanton for the benefit and on behalf of the said Mary E. Keller, his said daughter and the mother of these respondents; and respondents aver that the said agreement was not at the death of the said John Tanton, and is not now in whole or in any part, a just or existing charge or liability of, or against, these respondents or either of them, nor against any of the property or estate left by the said John Tanton, deceased.

## STATEMENT OF THE CASE.

This case was appealed from the County Court to the Circuit Court by appellant, from an order of the County Court sustaining exceptions to his report as executor of the will or John Tanton, deceased, filed January 16, 1894.   The County Court sustained the fifth objection of the objectors, the

children of Mary E. Keller, made to item 8th of credit of executor's report.

Item 8th of the credit report is as follows: "January 4, 1893, paid on M. E. Keller agreement as per will, $1,920.13, being the item to which the objection was sustained by the County and Circuit Court." The case was tried in the Circuit Court, and it sustained the decision of the County Court, and directed the costs to be paid in the due course of administration. The provisions of the said will of John Tanton, deceased, the construction of which is involved in this litigation, are as follows: "Second clause devises to his wife, Hannah Tanton, his homestead in El Paso, also certain personal property, and $1,200 to be paid to her annually, and to be paid to her in semi-annual payments for life. Third clause devises to Mary E. Keller the right to use and occupy as long as she lives, 160 acres of land, but she shall have no right to rent it to others, as long as her husband, Jacob Keller, lives, but may do so after his death; also devises sixty acres of land to Mary E. Keller in fee simple. Fourth clause devises to the heirs of the body of his daughter, Mary E. Keller, 1,280 acres of land, of which the quarter devised to his daughter for life formed a part, to have and to hold the same in fee simple, to be equally divided between them," etc. It also creates testator's son, T. O. Tanton, trustee for the children as long as his wife lives and until the youngest child becomes twenty-one years of age, "and he shall, out of the proceeds and income of the said lands, pay annually to my wife as long as she lives, the sum of $600, half yearly."

"I give to the children of Mary E. Keller, born and to be born, to be equally divided between them, one-half of my personal property which may remain for distribution when the estate is settled, less the $2,409.55 and compound interest thereon at the rate of eight per cent per annum, which shall be deducted therefrom and paid to my son, T. O. Tanton; should their share of my personal estate not be equal to said sum of $2,409.55 and interest as aforesaid, then my son, T. O. Tanton, shall have a lien on the said land devised

to them, to secure the payment thereof, and whenever the said sum and interest is paid, said T. O. Tanton shall surrender to his sister, said Mary E. Keller, her agreement to him of June 6, 1887." Fifth clause of the will: " I give and devise to my son, Thomas Oscar Tanton, commonly known as T. O. Tanton (here follows the description) 1,232.49 acres of land), to have and to hold the said land in fee simple absolute; I also give and bequeath to my son, Thomas Oscar Tanton, one-half of all my personal property which may remain for distribution after the payment of my debts and the settling of my estate, and I also direct that there be paid to him out of the other half of my estate, the sum of $2,209.55, with eight per cent compound interest from June 6, 1887, as specified in the fourth clause of this will." The residuary clause (6th): " Should I die seized or possessed of any property not herein disposed of, I give and bequeath and devise it to my son, T. O. Tanton, and the heirs of the body of my daughter, Mary E. Keller, to be equally divided between them, one-half to T. O. Tanton and one-half to the heirs of the body of my said daughter." The will was dated June 18, 1887. First codicil was dated July 21, 1891, and the second codicil was dated October 12, 1891. The will was admitted to probate January 8, 1892, and T. O. Tanton qualified as executor. The personal estate, after a complete settlement, only left $1,920.13 to be paid on the account mentioned in item 8th. The contract between Mary E. Keller and T. O. Tanton, dated June 6, 1887, by which Mary E. Keller, wife of Jacob M. Keller, promised, covenanted and bound herself to pay to T. O. Tanton, out of the first money, rents or profits which she should receive as the heir of John Tanton, for the sum of $2,409.55, with compound interest from June 6, 1887, was read in evidence.

This contract was given to secure a debt of Jacob Keller to T. O. Tanton, which the latter had been compelled to pay for him as surety. The objectors in this case claim and insist that before the death of John Tanton, deceased, the latter paid, by agreement with T. O. Tanton, the full amount of $2,409.55, in full of the agreement of Mary E. Keller to

Tanton v. Keller.

T. O. Tanton, and therefore the legacy, or whatever it may be called, provided for in the will of John Tanton, deceased, as shown in the will, was satisfied and adeemed, and therefore T. O. Tanton had no right to claim it out of the estate.

W. L. ELLWOOD and WINSLOW EVANS, attorneys for appellant, contended that the legacy is not what is known to the law as a specific legacy. It is a general or demonstrative legacy.

A specific legacy is a bequest of a particular article or specified part of the testator's estate, which is so described and distinguished from all other articles or parts of the same kind as to be capable of being identified. 13 Am. and Eng. Enc. Law, 10.

Ademption is the taking away or removal of the legacy. The doctrine of ademption results from the very nature of a specific legacy as already defined.

Unless the very thing bequeathed is in existence at the death of the testator, and then forms a part of his estate, the legacy is wholly inoperative. Pomeroy's Equity, Sec. 1131.

Pomeroy says: " Whether a legacy is specific depends wholly upon the language of the will. Unless the language described points out and identifies the particular thing given as a part of the testator's estate, distinguishing it from all other things of the same kind, then it is not specific.

Although the testator may at the time of executing the will have an article or articles of the same kind as that which he purports to give, still, unless his language is sufficient to refer to, designate and identify, the very article itself as forming a part of his estate, which he thereby gives, the legacy is not specific, but general." 3 Pomeroy's Equity, Sec. 1130.

Satisfaction is the donation of a thing with the intention, expressed or implied, that it is to be an extinguishment of some existing claim of the donee. 13 Am. and Eng. Ency 70.

Satisfaction can only operate as an extinguishment of the

claim with the consent of the claimant, who is necessarily
put to his election. Ibid. 71.

An effective re-publication brings forward the whole tes-
tamentary act to its own date, and the codicil gives the same
force to the will as if it had been written, executed and pub-
lished at the date of the codicil. Redfield on Wills, Part 1,
237; Duncan et al. v. Duncan, 25 Ill. 364.

A codicil affirming a will may strengthen an inference
against ademption (satisfaction) drawn from other circum-
stances. 13 Am. and Eng. Ency. 99.

A. R. RICH and R. M. BARNES, attorneys for appellees,
contended that in construing wills or other instruments, all
the parts will be considered together, and, if possible, effect·
will be given to every clause and provision, according to
the intention of the maker. The great and leading prin-
ciple in the construction of wills is that the intention of the
testator, if not inconsistent with the rules of law, must gov-
ern, and such intention is to be gathered from the whole
will taken together. Roundtree v. Talbot, 69 Ill. 246; John-
son v. Johnson, 96 Ill. 564; Hamlin v. U. S. Express Co.,
107 Ill. 443.

In cases of doubt, courts may resort to proof of surround-
ing circumstances to afford light in which to read the will,
and ascertain the intention of the testator. 2 Greenlf. on
Ev., Secs. 287 to 292; Wigram's Rules for Construction of
Wills, Note 1 to Sec. 267; Brownfield v. Wilson, 78. Ill. 467;
Richardson v. Eveland, 126 Ill. 37.

It was decided that a legacy of $2,500 to pay a debt on a
chapel, which amounted to $2,100, and which sum was paid
by the testator himself after the making of his will, was
thereby adeemed or satisfied. Taylor v. Tolan, 38 N. J.
Eq. 91; Richards v. Humphrey, 15 Pick. 133; Langdon v.
Astor's Executors, 16 N. Y. 36; 13 Am. and Eng. Enc. 99;
Carter v. Board, etc., 39 N. E. Rep. 628.

Payments made during the lifetime of a testator, designed
to apply on a legacy, will, after the death of the testator, be
applied, and the legacy will be canceled to the extent of

such payments.   Ware v. The People, etc., 19 Ill. App. 196. Where a legacy is given by a parent or one *in loco parentis*, and the testator afterward makes an advancement, or gift, or money, or property, *ejusdem generis*, to the same beneficiary, the presumption will be that the gift was intended in satisfaction of, or as a substitute for, the prior legacy; and, unless the presumption is rebutted, the ademption in full or *pro tanto*, as the gift is equal to or less than the prior benefit or legacy, will take place; the reason of the rule being that such parent, or one *in loco parentis*, being presumptively under common obligation to, and holding like, if not equal, esteem for, all the recipients of his bounty, having once fixed by his will their several portions, will be presumed not to intend, by a gift or advancement made subsequently, to break into the portion of one, or of several, to raise a double portion for another; a presumption which may be rebutted, and upon which extrinsic evidence is admissible to aid or rebut such presumption, including the declarations and conduct of the testator respecting such subsequent gift or advancement, and the breaking in upon the portions as fixed by his will, whether such declarations or conduct were contemporaneous with, or prior or subsequent to such suit. Richardson v. Eveland, 126 Ill. 44; Richards v. Humphreys, 15 Pick. 133; Howz v. Mallet, 4 Jones' Eq. 194; 1 Pomeroy's Equity, 564.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

It is insisted on the part of the appellant that the bequest of $2,409.55 to T. O. Tanton was a legacy, pure and simple, and that unless the will was revoked in some manner known to the law, it is to be paid; that the legacy is not what is known in law as a specific legacy, but is a general and demonstrative legacy, and therefore not adeemable. The view we take of the case is that the Circuit Court held correctly in deciding that the bequest over which this contention arises was adeemable.  Without going into a critical examination as to the different kinds of legacies, we think that the will in question, properly construed, gave one half

of the personal and real estate to the objectors subject to the charge of the payment of the sum of money in controversy, and that if the legacy was adeemed, then the half of the estate under the will went to the objectors, free from the charge of the appellant for the debt due him from Mary E. Keller and which the testator willed him by way of compensation, the sum of $2,409.55.

In the fourth clause of the will the testator provides, in speaking of the objectors, that "should their share of my personal estate not be equal to said sum of $2,409.55 and interest, as aforesaid, then my son, T. O. Tanton, shall have a lien on the land devised to them to secure the payment thereof," etc. Thus clearly indicating that he had given by his will to the objectors one half of the estate, which was "their share," although "their share" might be exhausted in paying the $2,409.55, which was nothing more than an incumbrance upon their bequest; in our minds it was clearly the intention on the part of the testator, only to give T. O. Tanton one half of the estate, and to give the other half to the objectors, but to compel the objectors to pay the debt of Jacob Keller for which Mary E. Keller, his wife, had given her bond. Where a legacy is given to pay the debt of another in the will, and after the execution of the will, the testator himself pays it, there will be an ademption. It seems to us to be a very plain proposition, and any refinement of reasoning that would lead to a different conclusion would do violence to the plain meaning of the testator, and would be unjust; such a legacy is in its nature a specific legacy, put in the will for a specific purpose, and when that purpose is fulfilled by the testator himself, the legacy will be adeemed. Taylor v. Tolon, 38 N. J. Eq. 91; Richards v. Humphrey, 15 Pick. 133; Langdon v. Astor's Executors, 16 N. Y. 36; Ware v. The People, etc., 19 App. 196; Richardson v. Eveland, 126 Ill. 37.

The question of fact tried in the case is as to whether or not the legacy of $2,409.55 was paid to T. O. Tanton by his father in his lifetime. The evidence in the case is somewhat conflicting, but from a fair consideration of it all, we

think the court was not in error in finding that John Tan
ton, the testator, had settled with and paid his son in full,
shortly before his death, the sum of $2,409.55, the amount
provided for in the will, and that it was done with the in-
tention of satisfying that portion of the will. It was
claimed, and insisted on by counsel for appellant, that if the
payment was made by the testator as claimed, it was upon
the condition that Mary E. Keller should sign a release ac-
cepting the provisions of the will on the day of its probate,
which they claim she did not do, hence the bequest, they
argue, was in full force. It is not so clear from the testi-
mony that such conditions were not attached, but we think
the court below was justified in finding there were no such
conditions as contended for by appellant. According to
the admissions of the appellant, he made a memorandum
at the time he settled with his father, for the bond of Mary
E. Keller, and attached it to the agreement of hers which
he held, or wrote it on the agreement at the time of the
setlement. This memorandum, some two years after the
settlement with his father, and after his father's death,
and after he anticipated trouble on account of this pay-
ment, he cut from this agreement and destroyed, so
that it could not be produced; he then undertakes in his
testimony to give an account of its contents, which ac-
cording to his evidence shows that the legacy was not to be
satisfied unless his sister, Mrs. Keller, ratified and agreed
to be bound by the will on the day of its probate. This
fact of itself throws suspicion on appellant's case, for if the
memorandum contained nothing against his interest and
claim, why should he desire to destroy it? and the court had
a right to take that fact into consideration with all the other
evidence, and give it such weight as it deserved. Downing
v. Plate, 90 Ill. 368; Winchel v. Edwards, 57 Ill. 41; An-
drews v. Irwin, 101 Ill. 411. Appellee makes objections to
the evidence admitted against objectors, of T. O. Tanton
and Hannah Tanton, wife of the deceased, and probably other
evidence, but as there are no cross-errors assigned we are not
called upon to notice them. It is insisted that Mary E.
Keller was an incompetent witness in favor of the objectors

because she would be heir to the item or amount freed by the ademption, if any, as one-half of it, being intestate estate, would go to her. But it will be seen from what we have held that it would all go to her children under the will, either as directly willed to them by the fourth clause or as residuary legatees under the sixth clause of the will. It is also objected that her testimony as regards what the testator said to her in his lifetime concerning the payment of the legacy in question, in the absence of the appellant, was incompetent. This may have been so, but as the substance of it all was brought to the attention of the appellant by his sister, and he had an opportunity to explain it, and it was admissible for that reason, no harm could be done as long as it was admitted otherwise. Although some incompetent evidence may have been admitted, we do not think that any error of the kind was reversible error.

There are many other points raised by these parties and argued which we do not regard of sufficient importance to notice. There is an objection that the circuit judge erred in sustaining objections of appellee to the appellant's executor's report not before the court and not appealed from. We regard the order of the Circuit Court as applying to the order appealed from only. After a careful review of the whole case, we are satisfied that justice has been done. The order and judgment of the Circuit Court sustaining the fifth exception to the eighth item of appellant's executor's report, appealed from the Circuit Court to this court, will be affirmed.