ELIZABETH G. DICKASON *et al.* Trustees, Appellants, *vs.* MARY E. ENGLISH, Appellee.

*Opinion filed February 16, 1916—Rehearing denied April 7, 1916.*

1. ANTE-NUPTIAL CONTRACTS—*when claim for dower is barred notwithstanding husband's estate is insolvent.* Where an ante-nuptial contract recites that the marriage shall not in any way change the legal rights of the parties or those of their children and heirs, that the parties intend that by virtue of the marriage neither shall have or acquire any right, title or claim in the estate of the other and that each will join in any mortgage or conveyance of the property of the other, a further provision that the wife is to receive $5000 at the husband's death in full payment and discharge of dower and all claims against his estate does not make the release of dower dependent upon the receipt of the money by the wife, and her claim for dower is barred though the husband's estate is insolvent. (*Brenner* v. *Gauch*, 85 Ill. 368, distinguished.)

2. SAME—*contract that marriage shall not affect the property rights of either party is not against public policy.* A contract between parties about to marry that the marriage shall not affect the rights of either in the property of the other or in his or her own property is not against public policy, and any reasonable provision which an adult person, previous to marriage, agrees to accept in lieu of dower will bar a subsequent claim for dower.

APPEAL from the Circuit Court of Vermilion county; the Hon. AUGUSTUS A. PARTLOW, Judge, presiding.

LINDLEY, PENWELL & LINDLEY, and ASHCRAFT & ASHCRAFT, (E. M. ASHCRAFT, of counsel,) for appellants.

H. M. STEELY, and H. M. STEELY, JR., for appellee.

Mr. JUSTICE DUNN delivered the opinion of the court:

On June 12, 1899, Joseph G. English and Mary E. Forbes entered into the following agreement:

"Memorandum of agreement between Joseph G. English, hereinafter designated as first party, and Mary E. Forbes, hereinafter designated as second party, both residents of Danville, Vermilion county, Illinois.

"*Witnesseth:* Whereas both of said parties contemplate entering into the marriage relation with each other and both are severally possessed of real and personal property in his and her own right and each have children by former marriage, all of said children being of age and possessed of means of support independent of their parents, and it is desired by the parties hereto that their marriage shall not in any way change their legal rights or that of their children and heirs in the property of each of them from what they are before the marriage. Therefore it is agreed:

"(1) First party agrees he will provide, during the continuance of the marriage, a home for second party; that the two children of second party may reside with their mother and be members of the family as long as they remain unmarried.

"(2) First party agrees, in case he shall survive second party, he will make no claim to any part of her estate as surviving husband. First party, in consideration of said marriage, waives and relinquishes all right of dower to the real estate of which second party may die seized and all right to her personal estate as surviving husband, heir-at-law or otherwise.

"(3) First party agrees, in case second party survives him, she shall receive from, and the executors, administrators, legal representatives or heirs of his estate shall pay to her, the sum of $5000 in full payment and discharge of all claims she may have to dower or homestead rights in real estate of which first party dies seized; also in full payment of all claims she may have, as his widow or heir-at-law, to an allowance or widow's award or to any part of his real and personal estate.

"(4) Second party, in consideration of said marriage, agrees, in case she survives first party, she will make no claim to any part or share of the real or personal estate of which first party dies seized, other than to the sum of $5000 agreed to be paid her out of his estate, as above provided. Second party expressly waives and relinquishes all claim to dower, homestead, widow's award or other right to the real and personal estate of which first party may die seized, except to the said sum of $5000, which is to be full satisfaction and discharge of all her claims, as widow or heir-at-law, to the estate of the first party.

272 — 24

"(5) It is mutually declared that it is their intention that by virtue of said marriage neither one shall have or acquire any right, title or claim in and to the real or personal estate of the other, but that the estate of each shall descend to or vest in his or her heirs-at-law, legatees or devisees, as may be prescribed by his or her last will and testament or by the law of the State then in force, as though no marriage had ever taken place between them.

"(6) It is mutually agreed that in case either of the parties desire to mortgage or sell and convey his or her real or personal estate each one will join in the deed of conveyance or mortgage, as may be necessary to make the same effectual.

"(7) It is further agreed that this agreement is entered into by each party with a full knowledge on the part of each as to the extent and probable value of the estate of the other and of all the rights conferred by law upon each in the estate of the other by virtue of said proposed marriage, but it is their desire that their respective rights to each other's estate shall be determined and fixed by this agreement, which shall be binding upon their respective heirs and legal representatives."

Each was the owner of real and personal property at that time. Two days later they were married and continued to live together as husband and wife until Joseph G. English died, on January 17, 1910. In January, 1908, English mortgaged certain real estate in Vermilion county to Livingston T. Dickason, in which his wife did not join. This mortgage was foreclosed and Livingston T. Dickason acquired title to the premises under the foreclosure proceeding. Upon his death the title became vested in the appellants, as trustees under his will. After the death of English his widow, the appellee, filed her claim against his estate for the $5000 mentioned in the agreement which has been above set out, and it was allowed but has not been paid, the estate being insolvent. The appellants, upon attempting to sell a part of the premises, learned that the appellee was claiming to be entitled to dower in them unless the sum of $5000 was paid to her, and to remove this claim as a cloud upon their title they filed a bill in the circuit court of Vermilion county. Mrs. English answered the bill, and upon a hearing it was dismissed for want of equity, and the complainants appealed. The question is whether the

ante-nuptial agreement constituted a release of dower at the date of the marriage, or whether the actual payment of the $5000 was necessary to constitute such release.

The agreement recites the intention of the parties in entering into it, "that their marriage shall not in any way change their legal rights or that of their children and heirs in the property of each of them from what they are before the marriage." It contains their mutual declaration "that it is their intention that by virtue of said marriage neither one shall have or acquire any right, title or claim in and to the real or personal estate of the other, but that the estate of each shall descend to or vest in his or her heirs-at-law, legatees or devisees, as may be prescribed by his or her last will and testament or by the law of the State then in force, as though no marriage had ever taken place between them." It contains the mutual agreement "that in case either of the parties desire to mortgage or sell and convey his or her real or personal estate each one will join in the deed of conveyance or mortgage, as may be necessary to make the same effectual." The husband agreed that after his death the wife should receive $5000 in full payment and discharge of her dower and all claims against his estate, and she agreed to make no claim to any part of his real or personal estate other than the said sum of $5000. Each party expressly waived and relinquished all claim to dower or other interest in the real or personal estate of which the other might die seized.

A contract between parties about to marry that the marriage shall not affect the rights of either in the property of the other or in his or her own property is not contrary to public policy but will be enforced. Any reasonable provision which an adult person previous to marriage agrees to accept in lieu of dower will bar a subsequent claim of dower. (*McGee* v. *McGee*, 91 Ill. 548; *Barth* v. *Lines*, 118 id. 374; *Dunlop* v. *Lamb*, 182 id. 319; *Kroell* v. *Kroell*, 219 id. 105; *Colbert* v. *Rings*, 231 id. 404.) This

proposition is not denied, but it is insisted that the agreement in question did not constitute a present and immediate release and relinquishment of the right of dower but was only to take effect as such release and relinquishment upon payment of the $5000 which the appellee was to receive from the executors, administrators, legal representatives or heirs of her husband after his decease. It is to be observed that the payment of the $5000 is not stated to be in consideration of the release of dower in property owned by English at the time of the marriage or during the marriage, but is expressly stated to be in full payment and discharge of all claims to dower or homestead rights in real estate of which he might die seized, and of all claims, as widow or heir-at-law, to any part of his real or personal estate. The consideration of the agreement, in fact, consisted, besides the promise to pay $5000, of the marriage itself and of the mutual covenants of the parties. The agreement of the parties that neither should have or acquire any right, title or claim in and to the real or personal estate of the other is a lawful agreement which they were competent to make. The marriage and the mutual covenants, alone, were a sufficient consideration to support such an agreement. If there had been no promise of a future payment appellee would have acquired no right of dower in her husband's property by the marriage because of her previous relinquishment of such right. The fact that she was to receive payment in money after her husband's death, in addition to the other considerations for the relinquishment of her dower, could not prevent the relinquishment from taking effect, as it otherwise would have done.

The case of *Brenner* v. *Gauch,* 85 Ill. 368, is relied on by the appellee. The statement of the agreement in that case is very brief. The case was a petition by a widow for an allowance of a widow's award. The agreement relied upon as a bar to her claim, as stated in the opinion of the court, was, that "at his death she shall have and receive

from his estate the sum of $1500, which sum shall be received by her in lieu of her dower and in full satisfaction of all other rights, claims and interests which she might otherwise have in the estate by virtue of said marriage." There was not, as in this case, an express declaration of the intention of the parties that their marriage should not in any way change their legal rights in the property of each of them from what they were before the marriage, and that neither should have or acquire any right, title or claim in and to the real or personal estate of the other. The agreement there was, to receive after the husband's death an amount in full satisfaction of the wife's rights in his property. The agreement here was that the wife should never acquire any rights in the husband's property or he in hers, and that his executor should pay her, after his death, a sum of money which she should receive in full satisfaction of her rights in real estate of which he should die seized and of all claims she might have to any part of his estate.

In *Freeland* v. *Freeland*, 128 Mass. 509, an ante-nuptial contract provided that the parties should retain their respective estates, with such as might thereafter accrue to them, separate and apart from each other, subject to the payment of their respective debts, with power to manage and dispose of their estates as they should see fit, and at their decease to descend to their respective heirs-at-law or otherwise dispose of as they might, respectively, by will direct, and that in case of the wife surviving the husband she should be paid the sum of $1500. On the death of the husband without assets the wife was held barred of dower, the court saying: "The benefit of the provision in the marriage contract that the wife * * * shall have the entire control of her estate during her life or the power to dispose of it at her death, and that failing any disposition of it it shall go to her heirs-at-law to the exclusion of her husband, has been fully enjoyed by her. The provision as

to the $1500 is not inserted in the contract as a condition precedent to her covenant becoming binding."

The decree of the circuit court will be reversed and the cause remanded, with directions to enter a decree in accordance with the prayer of the bill.

*Reversed and remanded, with directions.*