ARTHUR YOCKEY, Exr., Appellee, *vs.* ANGIE MARION, Appellant.

*Opinion filed October 27, 1915.*

1. ANTE-NUPTIAL CONTRACTS—*an engagement to marry is necessary to create confidential relation.* If an engagement to marry exists a confidential relation is created which imposes upon the intended husband the duty to disclose to his intended wife the amount and value of his property, but it is incumbent upon a wife who seeks to repudiate an ante-nuptial contract to show that a marriage engagement existed when the contract was made.

2. SAME—*when ante-nuptial contract does not show an engagement to marry.* A statement in an ante-nuptial contract that the contract is made in contemplation of the marriage of the parties does not show that an engagement to marry existed when the contract was made.

3. SAME—*when an ante-nuptial contract remains in force.* The fact that the husband may have said, after his marriage, that the ante-nuptial contract under seal, made before the marriage, did not amount to anything and that he had done away with it, does not establish a cancellation of the contract, where it was, in fact, not canceled but was afterward recorded by the husband and re-affirmed in his will.

4. SAME—*wife's assent to cancellation of ante-nuptial contract is necessary.* In order that the proposed cancellation by the husband of an ante-nuptial contract under seal may be effective the wife's assent to such cancellation is necessary.

5. SAME—*when an ante-nuptial contract does not bar widow's award.* A provision in an ante-nuptial contract that the intended wife accepts the provisions made for her "in lieu of and in satisfaction and bar of dower or thirds to which by the common law or by custom or otherwise she might be entitled to, in or out of

the property" of the intended husband, is not broad enough to bar the widow's award.

6. Adoption—*what does not affect jurisdiction of court.* If the averments of an adoption petition are sufficient to give the county court jurisdiction the order of adoption is not open to collateral attack, and the fact that the petition does not allege that the parents are .dead but merely that they are supposed to be dead does not affect the jurisdiction of the court, as no one but the parents, if living, have the right to complain.

Appeal from the Circuit Court of Christian county; the Hon. Thomas M. Jett, Judge, presiding.

J. E. Hogan, and E. E. Dowell, for appellant.

Arthur Yockey, *pro se,* (E. C. Irvine, W. B. McBride, and Leslie J. Taylor, of counsel,) for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

The appellee, Arthur Yockey, executor and trustee under the will of John Newton Marion, deceased, filed his bill in the circuit court of Christian county against the appellant, Angie Marion, widow of the testator, and other defendants, who were heirs-at-law, legatees and devisees under the will, asking the court to construe the will and an ante-nuptial contract, and to decree that the contract barred dower, homestead, widow's award, and every other legal right of the appellant in the estate. Afterward the appellant filed her bill against the appellee and the heirs-at-law, legatees and devisees for a partition of the real estate owned by the testator and for the assignment of dower and homestead, alleging that the ante-nuptial contract was void when made and was afterward canceled; that she had filed her renunciation of the will and elected to take under the statute, and that a proceeding by which Joseph Gordon was declared the adopted son of the testator was void. During the pendency of the appellee's suit the appellant filed her petition in the county court for a

widow's award, and it was allowed to her and fixed at $2000. The appellee appealed to the circuit court, where the chancery cases were consolidated and the court heard them together with the appeal from the county court. By the decree the court construed the will and the ante-nuptial contract, and held that the appellant was barred by the contract of all right and interest in the estate except her right to the widow's award and that the adoption proceeding was valid. It was ordered that the appellant be allowed her award of $2000, and the court adjudged against her the costs in the suit in which she filed the bill and the costs in the other suits against the appellee. The appellant prayed and was allowed an appeal, and has assigned errors on the decision of the court concerning the ante-nuptial contract and the adoption proceeding, and the appellee has assigned cross-errors concerning the allowance of the widow's award.

In the spring of 1886 Joseph Gordon was brought, with other children, from the Juvenile Asylum of New York to Christian county and was placed in the home of John Newton Marion and Elizabeth A. Marion, his wife, who were childless. He lived with them as a member of the family, and at the December term, 1891, of the county court of Christian county an order was entered upon their petition declaring him their adopted son and changing his name to Joseph Gordon Marion. The adopted son lived with John Newton Marion and his wife, and was regarded by them, and each of them, so long as they lived, as their adopted son. Elizabeth A. Marion died on July 17, 1894, and by her will devised to the adopted son 100 acres of land. About 1895 or 1896 John Newton Marion employed the appellant, who was then Angie Anderson, as his housekeeper, and she remained in that employment six or seven years until her marriage to him, on April 23, 1902, the family until that time being composed of her and her future husband and the adopted son. On April 18, 1902,

the appellant and John Newton Marion made and acknowledged the following ante-nuptial contract:

"This indenture, made and entered into by and between J. Newton Marion, of the city of Taylorville, in the county of Christian and State of Illinois, party of the first part, and Angie Anderson, of the city of Taylorville, in the county of Christian and State of Illinois, party of the second part:

"*Witnesseth:* That in contemplation of marriage to be consummated in the future between the parties to this instrument, and for the further purpose of barring dower or claim or right of dower which might accrue by reason of such intended coverture to the said party of the second part, of, in and to or out of all the lands or estates, either in law or equity, whereof the said party of the first part now is or shall be seized at any time during coverture between the parties to this instrument. And the party of the first part agrees, in consideration of the said marriage, to grant unto the party of the second part, at the time of his death and so long thereafter as she remains his widow, the use, occupation, management and control of the following described property, to-wit: Lots five (5) and six (6), in block two (2), in Wilkinson's Second addition to Taylorville. The said first party further agrees that at his death and so long as second party shall remain his widow, that in addition to the use, occupation, management and control of said premises before mentioned that the sum of $150 be paid to the party of the second part, annually, by the legal representative of the party of the first part.

"It is hereby agreed and declared that the provisions hereinbefore mentioned are made for the said intended wife, and she does hereby accept the same, in lieu of and in satisfaction and bar of dower or thirds to which by the common law or by custom or otherwise she might be entitled to, in or out of the property, either real or personal, of which said first party might die seized.

JOHN N. MARION, (Seal)
ANGIE ANDERSON. (Seal)"

Marion was then seventy-three years old and the appellant was fifty-five years old. He had no child or descendants but had the adopted son, and she was a widow having children and grandchildren of her former marriage. The contract was left with R. C. Neff, an attorney at Taylorville, and a marriage between the parties took place on April 23, 1902. The contract remained in the possession of Neff until the fall of 1906, when he delivered it to Marion, who had it recorded on January 21,

1907. On January 30, 1907, the will in question was executed, in which the testator recited the existence of the marriage settlement of record entered into before the marriage, and declared that in conformity with that agreement he devised to his wife for her natural life or so long as she remained his widow, the use, occupation, management and control of the homestead property in Taylorville, described in the contract, and in like conformity to the settlement gave her $150 per annum during her life or so long as she should remain his widow. He further directed his executor and trustee to pay all taxes, assessments and insurance on the homestead property, to keep the place in good repair and make necessary improvements during the natural life of the appellant or so long as she remained his widow, and if the sum of $150 per annum should not be sufficient to keep her, on account of sickness or if she should become an invalid in her declining years, the executor and trustee should allow her such additional sums from time to time as might be necessary for her comfort and support and upon her death to give her proper burial and pay her funeral expenses. The testator died on October 11, 1913, leaving the appellant his widow, and the will was admitted to probate. On October 27, 1913, the appellant filed in the county court her renunciation of the will and her election to take her legal share of the estate. The estate amounted to from $30,000 to $35,000, and at the time the contract was made Marion was worth perhaps $20,000.

The grounds upon which the appellant alleged by her bill that the ante-nuptial contract was void were, that it was not read or explained to her, that she was not advised as to its legal effect or her rights and was ignorant of the nature, character and value of the property and estate of her intended husband, and that the provision made for her by the contract was disproportionate to the value of the estate,

To prove the first alleged fact, R. C. Neff, the solicitor who filed the appellant's bill but had withdrawn as solicitor and sat at the counsel table during the hearing, suggesting facts for her benefit and aiding her solicitor, was called as a witness. He testified that when the parties came to his office after the contract had been drawn they sat down together and Marion read it and asked Mrs. Anderson to sign it. He also said that Marion then stated what he wanted and they talked about the contract. John B. Colegrove, who was at that time a partner of Neff, testified that the parties were at the office about fifteen minutes, talking about the contract, and during that time Marion stated what he wanted and they discussed the contract. Colegrove took the acknowledgment, and the averment of the appellant that she was ignorant of the contents of the contract is not supported by the evidence.

There is an argument against the conclusion of the court on the ground that there was a confidential relation between the parties and it was the duty of Marion to disclose the amount and value of his property to his intended wife, who confided in him. It is true that where an engagement to marry exists, that fact creates a confidential relation which imposes a duty on the husband to make a fair disclosure of his property, but if there was such an engagement prior to the making of the contract it was obligatory on the appellant to allege and prove the fact, and she did neither. The contract recited that it was made in contemplation of marriage, which, as a matter of course, was true. It would be an odd sort of thing for parties to make an ante-nuptial contract if nuptials were not in prospect, but the statement of the contract does not signify that an engagement had been made or that the execution of the contract was not a condition precedent to any engagement at all.

The next charge, that the appellant was ignorant of the nature, character and value of the property and estate

of her intended husband, was not only not proved but was disproved. During the time that the appellant was house-keeper for Marion he was the owner of 80 acres of land and had a life estate in 120 acres under the will of his deceased wife, and the property was rented. The tenants visited at the Marion home, took dinner with the family, paid rents in the presence of the appellant and discussed farm questions in general. Marion and the appellant drove to a farm occasionally and took dinner there, and we can not accept the theory of the bill that she was ignorant of the extent of his estate.

The fact, if it is a fact, that the provision for the appellant was disproportionate to the estate of the testator does not affect the validity of the contract.

It was also alleged that the contract was canceled, and on that subject Neff testified that when he delivered the contract to Marion the latter said that he and his wife had agreed to have the contract canceled, and that he afterward said that he had embodied principally the contract in his will. A daughter of appellant testified that Marion said that he and his wife at one time had a contract, but it did not amount to anything any more and was destroyed and done away with. A doctor said that when advising Marion to make a will he said that he had a contract at one time with his wife but it did not amount to anything any more. Whatever Marion may have said about the contract, there never was, in fact, any cancellation by him, as it was afterward recorded and he re-affirmed it in his will, and there was no evidence that the appellant assented to any cancellation, which would have been necessary to effect that result. As a matter of law, the contract, being under seal and not being canceled, destroyed or surrendered, remained in force. A sealed executory contract cannot be altered, modified or changed by parol agreement, although it may be surrendered and canceled by an executed parol agreement. (*Alschuler* v. *Schiff*, 164 Ill. 298;

*Brettmann* v. *Fischer,* 216 id. 142.)    An executed parol agreement may be shown to defeat a recovery upon an instrument under seal, and although the parol agreement may have been without consideration it may become a basis for an equitable estoppel, if by means of it one of the parties has been led into a line of conduct prejudicial to his interests if the contract should be enforced. The ·rule in equity also is that a party asking the court to enforce the specific performance of a contract will fail in his suit if a rescission or abandonment of the contract sought to be enforced is shown, and such rescission or abandonment may be deduced from circumstances or a course of conduct.    (*Lasher* v. *Loeffler,* 190 Ill. 150.)    The marriage had been consummated and nothing more was to be done by either party, so that their rights had become fixed, but whether the contract was executory or executed, it was not canceled or surrendered but remained in force.

The bill of the appellant charged that the petition for adoption of Joseph Gordon Marion did not show upon its face the necessary facts to give the county court jurisdiction to act.    She would only be concerned with any question as to the validity of the proceeding in case the antenuptial contract should be set aside and the extent of her interest in the estate should be affected by the question whether he was an heir.    Inasmuch as she failed to establish any claim to a share of the estate, whether he was legally adopted or not does not concern her.    But the objections raised to the proceeding were without substantial basis.    The law conferred power on the county court to make the order upon the filing of a petition stating certain facts.    It will not be necessary to enter into a detailed statement of the contents of the petition, but its averments were sufficient to give the court jurisdiction and the order of adoption is therefore not open to collateral attack. (*Flannigan* v. *Howard,* 200 Ill. 396.)    The petition alleged that the parents of the child were supposed to be

dead, but if, as a matter of fact, they were living, (of which there was no competent evidence,) the jurisdiction of the court would not be affected, and no one else could complain except the father and mother. *Sullivan* v. *People,* 224 Ill. 468.

The appellant objects to the consideration of the cross-errors concerning her award, on the ground that they attack the decision of the court in the appeal from the county court, in which it is said a separate judgment was rendered. If it is true that there was a separate judgment, it is also true that the circuit court had acquired jurisdiction by the filing of the appellee's bill praying that the court should declare the appellant barred of the widow's award by the contract, to determine that question. The court did determine it by the decree and allowed the award which was to be paid to her. We are of the opinion, however, that the cross-errors cannot be sustained. In a case where the widow is the only person interested, an antenuptial contract which is broad enough in its terms to include the widow's award will operate as a relinquishment of the right to an award. (*Kroell* v. *Kroell,* 219 Ill. 105; *Pavlicek* v. *Roessler,* 222 id. 83.) This contract is not as broad in its terms as the contracts in which it has been held that the award was released. It, in terms, releases the appellant's claims to dower and thirds in the property, real and personal, of the testator, which referred to the widow's share of the real and personal property of a deceased husband. She agreed to accept what was provided for in the contract for the interests therein specified, but the language was not broad enough to bar her of every claim she might have against the estate. The widow's award is a statutory allowance for the benefit of the widow, and where it is neither released in terms nor by language sufficiently broad to include it, it should not be regarded as relinquished.

The decree is affirmed.          *Decree affirmed.*