(No. 22670.—)

MADELENE GEIGER, Admx., Appellee, *vs.* HENRY J. MERLE
*et al.* Appellants.

*Opinion filed April 17, 1935—Rehearing denied June 17, 1935.*

498

500

FARTHING and SHAW, JJ., dissenting.

CUTTING, MOORE & SIDLEY, and BROWN, FOX & BLUM-
BERG, (CHARLES S. CUTTING, and CHARLES LEROY BROWN,
of counsel,) for appellants.

HELMAR, MOULTON, WHITMAN & HOLTON, (ROLAND
D. WHITMAN, and HERBERT R. TEWS, of counsel,) for
appellee.

Per CURIAM: On March 7, 1922, Sarah J. Merle filed
in the circuit court of Cook county a bill of complaint
against Henry J. Merle, William F. Merle, Jr., Bertha
Boyle, Maud Henn, Annie Roach, Mary Loss, Rosina
Merle, Cecelia Merle and the Standard Trust and Savings
Bank, a corporation, and Charles S. Castle, as trustees.
More than four years later the bill was amended. It al-
leged generally that Sarah Jane Merle, formerly Sarah J.
McNeff but divorced from her first husband, was on Feb-
ruary 14, 1917, lawfully married to William F. Merle and
lived with him thereafter as his wife until his death, on
January 28, 1921. Merle died testate, leaving him surviv-
ing Sarah J. Merle, his widow, and the eight above named
children by a former marriage, all of whom at the time of

their father's second marriage were of age. Sarah J. Merle had three children by her first marriage. One was of age and two were minors at the time of her second marriage.

The amended bill alleged that on February 14, 1917, William F. Merle and Sarah J. McNeff signed a pretended ante-nuptial agreement, and on the same date joined with the eight children of Merle, and the trustees therein named, in a pretended trust agreement. The ante-nuptial agreement recited that both of the parties thereto were familiar with their respective properties and wealth, and provided that each should hold and control his or her individual property separate and apart from that of the other without the interference of either. Upon the death of the husband his widow would receive $50,000, which should be in full payment of all sums payable to her under the provisions of the trust agreement, which was therein and thereby confirmed, and be in full payment, release, satisfaction and discharge of all her rights of dower, homestead, widow's award, and all other rights, interests, claims or allowances to or against the estate of her intended husband. The trust agreement was executed by the parties to the ante-nuptial agreement, the children of Merle and the trustees. It was an agreement, in conjunction with the ante-nuptial agreement, to confirm the property rights of the parties to the ante-nuptial agreement and to establish the rights of the children of Merle in his estate after his decease. Merle agreed to convey to the first named of the trustees all of certain property described in the instrument. Sarah J. McNeff was to receive $50,000, to be paid her under the terms of the ante-nuptial agreement, to be in lieu of dower and all other interests in the estate of Merle. The eight children of Merle were to receive the remainder of the estate within the time prescribed by the trust agreement. Contemporaneously with that agreement Merle executed a deed conveying to the first named trustee the real estate described in the trust agreement. He also executed an instrument

called "William F. Merle's property declaration," consisting of four pages, itemizing his property, each of which pages was signed on the margin by Sarah J. McNeff. Sarah J. McNeff made a similar property declaration. All of these instruments, together with the will and a codicil of Merle, were attached to and made parts of the amended bill. Various enterprises in which it was alleged Merle was interested were mentioned in the amended bill and it was asserted therein that his wealth was in excess of $1,500,000 at the time of the execution of the ante-nuptial and trust agreements and the marriage of the parties. All of Merle's real and personal estate was in this State, except certain described land in Arkansas. Sarah J. McNeff owned real estate worth about $4000 and personal property and cash of the value of about $4100. Merle's will, dated February 16, 1917, and a codicil dated May 22, 1918, were admitted to record in the probate court of Cook county. The Standard Trust and Savings Bank qualified as executor. The widow renounced all claim to the benefit of any jointure and the provisions of the will and codicil made in her favor and elected to take her dower in the estate as provided by law. It was alleged that the testator had standing in his name at the time of his death no real estate except two cemetery lots of the value of about $1000, personal property inventoried at $9547 and cash on deposit $5185.76, certain accounts receivable, promissory notes, secured and unsecured, a judgment, certificates of club membership, miscellaneous assets of the apparent face value of $45, and warehouse receipts for twenty-five barrels of whisky. The total value of the personal property and assets considered good does not exceed $35,754.16, and there are claims filed in the probate court in excess of $113,000, over $90,000 of which have already been allowed.

The amended bill charged that the eight children of William F. Merle, some time between July, 1914, and October, 1916, unlawfully conspired and agreed to prevent the

marriage of Sarah J. McNeff and William F. Merle, or to persuade their father to convey to them practically all of his real estate and personal property for the purpose of defrauding Sarah J. Merle of dower, homestead and widow's award, and that Merle joined in the conspiracy and agreed to make such distribution of his property, which it was understood among the conspirators would not be enforced against Merle; that some of the property purported to have been disposed of by him Merle retained in his possession. It was his purpose, as the result of the conspiracy with his children, to leave no estate at his death. The amended bill further alleged that Sarah J. Merle (then McNeff) signed the instruments mentioned on the date of her marriage to Merle without knowing their contents. It was alleged that the property declaration of Merle was not a full, fair or truthful disclosure of the nature, character or extent of his property or income at the time of the signing of the ante-nuptial agreement.

In the prayer of the amended bill Sarah J. Merle offered to do equity, and prayed that the transfers, assignments and conveyances pretended to be evidenced by the trust agreement and the deed to the trustee, so far as the widow was concerned as affecting her dower and statutory thirds, be declared fraudulent and null and void and that statutory thirds be assigned and set off to her as provided by statute, and general equity relief was prayed.

After a general and special demurrer was overruled an answer was filed to the amended bill by all of the defendants denying most of its allegations but admitting the execution of the various instruments mentioned in and made parts of the amended bill. Sarah J. Merle died on November 30, 1931, and Madelene Geiger, her daughter, who was the administratrix of her estate, filed a bill of revivor and a supplemental bill, which the defendants in the original suit answered, denying her right to have the cause stand revived or her right to have equitable relief. Be-

504

cause of the consolidation of the Standard Trust and Savings Bank, trustee in the trust agreement mentioned, with the Central Republic Trust Company, the latter bank was made a party to the suit. The entire matter was referred to a master in chancery, who took depositions, heard evidence and made a report finding that the equities were with the original complainant and that the suit was properly continued by her administratrix. A decree was entered by the chancellor in accordance with the master's findings, holding that the ante-nuptial and trust agreements and the conveyance accompanying the trust agreement were null and void; that gifts or pretended gifts of Merle to his children were fraudulent and void; that the value of the estate of Merle at the time of his death greatly exceeded the sum of $693,323.73 (a valuation determined by the United States government for Federal tax purposes in 1917); that Sarah J. Merle was in the first instance and at the time of her husband's death, and the present complainant-appellee, Madelene Geiger, as administratrix of her mother's estate, is entitled to one-third of the personal property described in the trust agreement; to one-third of certain described securities pretendedly given to Henry J. Merle; to one-third of certain specified shares of the capital stock in certain corporations, previously owned by Merle and transferred to William F. Merle, Jr.; to one-third of the income from or income value of the real estate described in the trust agreement from March 8, 1922, the date of filing the original bill, to November 30, 1931, the date of the death of Sarah J. Merle, and to damages for wrongfully withholding the income from or income value of such real estate, and that the cause be referred to a master in chancery to take an accounting in accordance with the findings. From that decree appellants have prosecuted this appeal.

William F. Merle was a Chicago business man, whose principal attention was given to the business of the A. H. Andrews Company, manufacturers of and dealers in furni-

ture and fixtures. He was interested in a number of enterprises and had accumulated a large amount of real and personal property. Sarah J. McNeff was a trained nurse and supported her three children by that work. She was living apart from her husband but was not divorced from him at the time she met Merle, in 1912. Merle's first wife died in 1914 and was attended in her last illness by Mrs. McNeff as nurse. The evidence shows that in 1914 Merle, who was twenty-five years her senior, proposed that Mrs. McNeff obtain a divorce from her husband and marry him. She obtained a divorce in 1915 and thereafter Merle proposed marriage and was accepted, and preceding their marriage the instruments heretofore mentioned were executed.

The only ground presented for a direct appeal to this court is upon error assigned and the asserted unconstitutionality of section 10 of the Dower act because it embraces legislation on a subject not expressed in the title of the act, in violation of section 13 of article 4 of the constitution, and also amends section 1 of the Wills act without any reference to that act. As it stood in 1921 the title was, "An act to revise the law in relation to dower." It is contended that any provision with respect to personal property does not properly come within the Dower act under that title, because dower relates only to an interest in real estate. The common law estate of dower was confined to an interest in land. (Roper on Wills, ·(Baron & Feme,) 1805, p. 107.) We have held that the term "dower" retains its common law definition in this State. (*Canavan* v. *McNulty*, 328 Ill. 388; *Clark* v. *Hanson*, 320 id. 480.) Whether the title "dower" technically expresses the subject matter of legislation with respect to personal property, it is within the power of the legislature to describe the interests of a surviving husband or wife in the estate of the other by that single term. While many statutes amount to a mere re-statement of the common law definition, in many States the term "dower" is used in a more comprehensive

sense. (9 R. C. L. p. 561.) While the general meaning of dower may remain unchanged in the statute, in a particular section it may be enlarged to embrace an interest in personal estate. (*Boyles* v. *McMurphy,* 55 Ill. 236.) The interest so provided is one in the nature of dower. When a provision has some connection with the subject of legislation more or less direct, and the act does not contain matter having no relation to the title, the constitutional provision mentioned is not violated. (*Fenske Bros.* v. *Upholsterers Union,* 358 Ill. 239; *People* v. *Beemsterboer,* 356 id. 432; *People* v. *Mueller,* 352 id. 124.) Moreover, the substance of section 10 of the Dower act with respect to barring dower in lands and a share in the personal estate of a husband unless the widow renounces the benefit of devises or bequests made for her was a part of our statute on wills in 1829. (Rev. Code of Laws of Ill. 1829, secs. 39, 40, p. 204; *McMurphy* v. *Boyles,* 49 Ill. 110.) These provisions were transferred from the Statute of Wills to that of Dower in the revision of 1845. (Rev. Stat. 1845, pp. 198, 199; *McMurphy* v. *Boyles, supra.*) Dower at that time was the subject of a distinct and independent chapter. In 1866 the same subject matter appeared in the Chancery Code in a subdivision of that act entitled "Dower." (Scates & Blackwell's Ill. Stat. 1866, pp. 151, 152.) Section 10, still combining the provision for barring dower in lands and a share in the personal estate, thereafter appeared in the Dower act, with that same title, as a distinct and independent subject and so remained to the time this suit was instituted. (Cahill's Stat. 1921, p. 1324; Smith's Stat. 1923, p. 749.) After the suit herein was commenced, the title of the Dower act was amended to read, "An act concerning the rights in real and personal property accruing by reason of the marital relation." (Laws of 1927, p. 408.) The substance of section 10 of the act has appeared under three separate titles since its original enactment, but it was the law of this State under the title

of "Dower," without any reference to personal property, for over eighty years and has been acted upon and valuable rights have accrued under it. It will not now, because of its title during that period, be declared unconstitutional. *People* v. *Bergin,* 340 Ill. 20; *Hanover Fire Ins. Co.* v. *Harding,* 327 id. 590; *VanNada* v. *Goedde,* 263 id. 105; *Gifford* v. *Culver,* 261 id. 530; *Richter* v. *Burdock,* 257 id. 410; *Hill* v. *Tohill,* 225 id. 384.

It is next contended by counsel for appellants that the cause of action is one which does not survive and that it wholly abated upon the death of the original complainant. This contention is predicated upon the asserted personal nature of the action and the statutory basis of the interest of a wife or widow in her husband's estate which the widow in this case was seeking to establish upon her husband's death. Appellee's counsel contend that fraud is the gist of this action and that it survives.

The gist of an action is the essential ground or object of the suit and without which there is not a cause of action. (*Lipman* v. *Goebel,* 357 Ill. 315; *First Nat. Bank of Flora* v. *Burkett,* 101 id. 391.) A cause of action includes every fact necessary for the plaintiff or complainant to prove to entitle him to succeed and every fact which the defendant would have a right to traverse; the right to prosecute an action with effect. (*Walters* v. *City of Ottawa,* 240 Ill. 259.) The cause of action is the wrong done—not the measure of compensation for it or the character of the relief sought. (*Friederichsen* v. *Renard,* 247 U. S. 207.) Whether fraud is the gist of the present action is determined from the pleadings. The amended bill alleged fraud in the disposition of certain property of her intended husband subsequent to his engagement to marry the original complainant and that his children fraudulently conspired to deprive her of the property rights to which she would be, and ultimately was, entitled upon the death of her husband. Marriage is a sufficient consideration for

an ante-nuptial contract. (*Seuss* v. *Schukat*, 358 Ill. 27; *Morris* v. *Masters*, 349 id. 455.) The law fixes the rights of each spouse in the property of the other in the absence of a valid agreement between them, but it has always permitted them, in contemplation of marriage, to fix those rights by agreement equitably and fairly between them and to exclude the operation of the law in that respect. (*Wetsel* v. *Firebaugh*, 258 Ill. 404; *Kroell* v. *Kroell*, 219 id. 105; *Seuss* v. *Schukat, supra.*) The children of the parties also come within the influence of the consideration for such a contract when, as was the case here, the covenants, agreements and conditions of the contract were made to extend, apply to, be binding upon and inure to the benefit of the heirs, executors, administrators, representatives, devisees, legatees and next of kin of both parties. (*Dunlop* v. *Lamb*, 182 Ill. 319.) Nine of the children were over age and two were minors. One of the purposes of the agreement was to have a property settlement "in order to avoid any dissension among their children as to their property rights and in order to promote the welfare of both parties and their children."

Fraud is one of the recognized subjects of equity jurisprudence, and courts of equity will relieve against fraud affecting substantial rights in whatever form it may appear. (*Wright* v. *McKinney*, 287 Ill. 529; 1 Story's Eq. Jur. (12th ed.) secs. 68, 187; Wait on Fraudulent Conveyances, (3d ed.) sec. 60.) If an agreement by an intended wife has been induced by fraud of her prospective husband or by the designed concealment of the value of his estate, equity will afford her relief. (*Higgins* v. *Higgins*, 219 Ill. 146; 13 R. C. L. p. 1036.) The court can always shape its remedy to meet the demands of justice in every case, however peculiar. (1 Pomeroy's Eq. Jur. (4th ed.) sec. 109; 2 id. sec. 910.) Having acquired jurisdiction for one purpose a court of equity will retain and settle the entire matter. (*Wolf* v. *Lawrence*, 276 Ill. 11; 1 Pom-

eroy's Eq. Jur. (4th ed.) sec. 231.) While there was a prayer that dower and statutory thirds be set off to the widow as provided by statute, there was a request that the transfers, assignments and conveyances mentioned in the amended bill be declared null and void because they were fraudulent, and there was a prayer for general relief. A general prayer for relief is sufficient to support any decree warranted by the facts alleged in the bill and established by the evidence. (*Parker* v. *Gray,* 317 Ill. 468; *Struve* v. *Tatge,* 285 id. 103; *Rankin* v. *Rankin,* 216 id. 132.) The action was within the general jurisdiction of equity because of the charge of fraud. It was not a special statutory proceeding, though it asserted statutory rights.

An abatement, in the sense of the common law, is an entire overthrow or destruction of the suit, but in equity an abatement signifies only a present suspension of all proceedings in the event of the death of one of the parties. (Story's Eq. Pl. (10th ed.) sec. 354; 1 R. C. L. p. 20.) Section 10 of the act on abatement provides that if there is but one plaintiff, petitioner or complainant in an action, proceeding or complaint, in law or equity, and he shall die before final judgment or decree, such action, proceeding or complaint shall not on that account abate if the cause of action survive to the heir, devisee, executor or administrator of such decedent, but any of such to whom the cause of action shall survive may, by suggesting such death upon the record, be substituted as plaintiff, petitioner or complainant and prosecute the same as in other cases. (Cahill's Stat. 1933, p. 41; Smith's Stat. 1933, p. 74.) "If the cause of action survive to the heir, devisee, executor or administrator of such decedent" this action is included within the foregoing section.

It is contended by counsel for appellants that the action is so entirely personal that it could not be transferred to the personal representative of the deceased party in interest, and that such is one of the tests of whether an

action survives. Section 123 of the act on administration of estates provides that in addition to the actions which survive by the common law the following shall also survive: Actions of replevin, actions to recover damages for an injury to the person, (except slander and libel,) actions to recover damages for an injury to real or personal property, actions against officers for misfeasance, malfeasance or non-feasance of themselves or their deputies, and all actions for fraud or deceit. (Cahill's Stat. 1933, p. 65; Smith's Stat. 1933, pp. 100, 101.) Counsel for appellee contend that the action here is included within the words "all actions for fraud or deceit." Counsel for appellants contend that these words refer only to the common law action, and, even admitting that fraud is the gist of the action, the suit is not an action for fraud. The word "all" is comprehensive and might indicate the legislative purpose not to confine the right of survival to one kind of action under the common law founded on tort and seeking damages but to embrace all actions under those subjects. It is, however, unnecessary to decide whether the action properly comes within that statute, for, being an action within the general jurisdiction of equity, and fraud being the gist of the action, it does not die with the person. (*Warner* v. *Flack*, 278 Ill. 303.) The bill of revivor was unnecessary under the statute. The death of the party was sufficiently suggested of record, and the action did not abate and was properly continued by the administratrix of the estate of the original complainant.

Counsel for appellants contend that William F. Merle had an unrestrained right to dispose of his personal property during his lifetime without the consent of his wife. Counsel for appellee contend that certain of the property so transferred was in fraud of the original complainant's rights. A husband has the power to dispose of his personal property during his life independently of the concurrence of and exonerated from the claim of his wife, provi-

ded the transaction is not merely colorable and attended with circumstances indicative of fraud upon the rights of the wife. (*Blankenship* v. *Hall*, 233 Ill. 116; *Padfield* v. *Padfield*, 78 id. 16.) This same rule applies to a gift or transfer of real estate by a prospective husband on the eve of his marriage without the consent of his intended wife. *Deke* v. *Hucnkemeir*, 260 Ill. 131; *Dunbar* v. *Dunbar*, 254 id. 281.

The question is presented whether the original complainant was a competent witness in the suit wherein the children of William F. Merle were defending. Counsel for appellee contend that these children were claiming only as grantees and not as heirs, devisees or legatees, and that, therefore, the widow of Merle was not barred as a witness by section 2 of the Evidence act. Counsel for appellants contend that the children at the time the suit was brought were the heirs, devisees and legatees of Merle, and that in view of all the circumstances they could not and did not defend simply in the capacity of grantees. The suit clearly involved property and property rights not only under the conveyances but also under the ante-nuptial and trust agreements and specifically sought to have dower assigned and the conveyances and the trust agreement set aside. While counsel for appellee have treated the ante-nuptial agreement as void and have not specifically asked that it be set aside, that agreement was the basis of the concurrent and subsequent agreements concerning the property rights of the wife and the children of Merle, and the decree, in fact, set the ante-nuptial agreement aside along with the other instruments mentioned. A contract into which a party has been induced to enter by the fraud of another party is not void but is only voidable at the election of the defrauded party. (*Hustad* v. *Cerny*, 321 Ill. 354; *Babcock* v. *Farwell*, 245 id. 14; *Rigdon* v. *Walcott*, 141 id. 649.) Where a bill specifically prays for the assignment of dower and contains a prayer for such other and further relief as equity

may require, the court is authorized, under the general prayer, to set aside an ante-nuptial agreement where it is necessarily incidental to granting the specific relief prayed and where the facts warrant it, even though there is no reference to the ante-nuptial agreement. (*Parker* v. *Gray, supra.*) The setting aside of the ante-nuptial agreement was necessarily incidental to the granting of the specific relief prayed in this case.

The trust agreement recited that the daughters and sons of William F. Merle "are the intended heirs-at-law and testamentary beneficiaries of the party of the first part," (Merle,) and that agreement and the transfers were made as a settlement of those interests and those which the wife would have. The will provided that upon the death of the testator and when the trust estate should cease the trustee would distribute the trust estate, together with all accumulations, to and among his children equally, share and share alike. Upon Merle's death his children became his heirs and testamentary beneficiaries. The releases by the original complainant in the ante-nuptial and trust agreements, which provisions were also recognized and confirmed by the will, were not operative in favor of the children of the testator merely as grantees. When the original complainant sought to set aside the transfers of personalty she was attacking the rights of the children as legatees of their deceased father, and the children were necessarily parties in the capacity of heirs and testamentary beneficiaries.

It is contended that if the original complainant was not a competent witness there was a lack of proof of the charge of fraud. Certain of the children of William F. Merle testified to occurrences and conversations with the original complainant and with their father in her presence. With respect to these various occurrences and conversations both sides testified. The original complainant was a competent witness, under such circumstances, under the third exception in section 2 of the Evidence act. (*Roche*

v. *Roche*, 286 Ill. 336; *Vail* v. *Rynearson*, 249 id. 501; *Calkins* v. *Calkins*, 220 id. 111.) The conversations in question for the most part related to evidences of dislike of the original complainant by the children of Merle on the one side, and on the other hand to her dislike for the children of Merle. One witness who was not a party to the proceeding testified on behalf of appellee that he knew that there was some trouble in the family of Merle with respect to his second marriage, and that against the wishes of the original complainant there had been an attempt to have the wedding postponed. He knew that a property settlement by Merle had been made for his intended wife setting aside $50,000, and providing $400 a month for her until she received the principal sum of the settlement, and if she needed a greater amount then provision might be made through Henry J. Merle, one of the sons. Another witness, a brother of the original complainant, testified that William F. Merle told him his children objected to his proposed marriage, but that if anything happened to him before the marriage his sister would be taken care of by him as a ninth child. The original complainant told this witness about her humiliation at the hands of the children of Merle about four days before her marriage, when they were all together at a dinner to celebrate the forthcoming marriage. Henry J. Merle had a talk with the original complainant on the afternoon of her marriage to William F. Merle, and later on that same day the witness was present in the office of the attorneys for William F. Merle who prepared the papers thereafter executed, and while he did not see the instruments signed by his sister, she signed them. The witness testified that Merle told him that Henry, his son, had informed him that the original complainant was padding bills and that she was interested in other men. The original complainant testified with respect to the circumstances of her signing the papers which were presented to her by her husband, to her lack of knowledge of their

contents and that Merle told her that they were in reality of no importance and explained why they were prepared. None of the original complainant's testimony came within the exception of section 2 of the Evidence act and upon objection it was inadmissible under that section. (*Stokes* v. *Stokes,* 240 Ill. 330; *Murdock* v. *Murdock,* 219 id. 123; *Yarde* v. *Yarde,* 187 id. 636; *Taylor* v. *Taylor,* 144 id. 436.) This is true notwithstanding counsel for appellants cross-examined upon it. (*Achilles* v. *Achilles,* 137 Ill. 589.) Courts of equity will look to the substance to ascertain the real interest of a party in any proceeding, regardless of the allegations or averments in the pleadings. (*Brownlie* v. *Brownlie,* 351 Ill. 72; *Jones* v. *Abbott,* 235 id. 220; *Volbracht* v. *White,* 197 id. 298; *Bardell* v. *Brady,* 172 id. 420; *Pyle* v. *Pyle,* 158 id. 289.) The entire record is before us in chancery cases, and ordinarily it will be assumed that incompetent evidence was rejected and only competent evidence was considered. (*Oswald* v. *Nehls,* 233 Ill. 438; *Goelz* v. *Goelz,* 157 id. 33; *Treleaven* v. *Dixon,* 119 id. 548.) Though Henry J. Merle talked with the original complainant about the papers which she was to sign, there was nothing to indicate that he misled her as to their contents, and none of the other children of William F. Merle attempted to mislead her. It appears that there was some opposition by the children of Merle to the proposed marriage. This opposition was explained by different of the children to be upon the ground that the original complainant's divorced husband was living and that such a marriage was not sanctioned by their church. Giving to the testimony with respect to the opposition to the marriage full force and effect, it falls short of proving fraud in the procurement of the ante-nuptial settlement for a smaller amount than the original complainant understood she was to receive. With the incompetent testimony of the original complainant excluded, there was not sufficient evidence to sustain the allegations of fraud charged in the

amended bill of complaint unless the evidence shows that the settlement under the ante-nuptial and trust agreements, in view of the wealth of Merle, was in itself proof of fraud. That question will next be considered.

Where the parties are engaged to be married before the execution of an ante-nuptial contract a confidential relationship is deemed to exist, and if the provision made for the intended wife in such contract is so small as to be disproportionate to the extent and value of the intended husband's estate, the presumption is raised of an intentional concealment of the extent of such estate, and the burden is on those claiming the validity of the contract to prove that the intended wife had full knowledge, or under all the circumstances ought to be charged with full knowledge, of the extent of the intended husband's property. (*Kuhnen* v. *Kuhnen*, 351 Ill. 591; *Brown* v. *Brown*, 329 id. 198; *Debolt* v. *Blackburn*, 328 id. 420; *Warner* v. *Warner*, 235 id. 448.) Such a presumption is not evidence, and as soon as contrary evidence is produced the presumption vanishes. (*Sharp* v. *Sharp*, 333 Ill. 267; *Osborne* v. *Osborne*, 325 id. 229.) The original complainant signed each page of the property declaration of her intended husband, and it is not shown that it did not contain a substantial statement of his property. It consisted of items of real and personal property, with the estimated value of most of the items and the aggregate value of the collected items which readily could not be shown separately, and the total value of all the property was shown. The instrument by a simple caption disclosed what it was, and its contents were so plainly stated that they could not be misunderstood. The original complainant was familiar with the character of the instrument because she executed one of a similar nature, though it showed only a nominal value of property, but it was sworn to before a notary public. During the time the original complainant was signing each page of the property declaration of William F. Merle she could have

seen the various items of property at a glance and the total of their value and the aggregate amount of all the property. She was sufficiently advised of the property owned by her intended husband. (*Landes* v. *Landes,* 268 Ill. 11; *Brown* v. *Brown, supra.*) The ante-nuptial agreement was likewise a simple document, phrased in simple enough language for her to understand. The trust agreement was more complex and she might not readily understand its provisions, but i' deprived her of no right which the ante-nuptial agreement gave her. The papers were given into her custody to place in a safety deposit box to which she had access and she could have become familiar with them at any time. Though she testified that she was told by her intended husband that these different papers which were being executed did not mean anything, her testimony in that respect was incompetent. There was testimony by other witnesses hat the original complainant was given the papers to read, had an opportunity to read them and voluntarily signed them. She admitted that she told Henry J. Merle that she would sign the papers which she knew had been prepared. In their talk about the papers there was nothing said to prevent her from seeing and knowing their contents, and Henry J. Merle was not in a position to withhold knowledge of their contents. He testified that he explained them to her.

It is contended that the evidence shows that certain securities were not delivered to the trustee or grantee but remained in the possession of William F. Merle after the execution of the trust agreement. The trust instrument stated that certain stocks and bonds were held in trust, but nevertheless the right, title and interest of Merle in them was assigned and transferred to the trustee. Certain of the property shown in the property declaration of Merle did not purport to be transferred by the trust deed. Shares of stock in four different companies and bonds in two companies were given to Henry J. Merle by his father in 1920.

The decree set aside the transfer of certain shares of stock of the A. H. Andrews Company made by Merle to two of his sons in 1914. There were no specific allegations tending to show why this transfer was fraudulent and void and there was no specific request for its re-transfer. The original complainant was not divorced from her first husband at the time of these transfers, there was no engagement then to marry between herself and Merle, and she could not have been a party to a legal ante-nuptial agreement. Merle had given his sons stock in the same company long previous to the time he became acquainted with the original complainant. There was therefore nothing unusual about the transfer of this stock. Under the circumstances it cannot be held that the transfers were made with the intention of defrauding of anticipated marital rights a woman to whom the transferor was not engaged. In addition to the amounts provided by the instruments here in question Merle executed a trust agreement in 1920 to Henry J. Merle, in and by which an annuity of $2400 a year was provided for the original complainant for and during the time she remained his widow. This amount, with those provided in the ante-nuptial and trust agreements, was not accepted. The property declaration disclosed real and personal property exceeding $1,300,000 in value. The decree found that the estate of Merle at the time of his death exceeded $693,000. We think, however, that the original complainant had knowledge of the extent, nature and value of her intended husband's property. Without the incompetent testimony of the original complainant there was insufficient evidence to show actual fraud. Though the amount the original complainant would receive under the ante-nuptial agreement was less than she would receive under the law, the presumption that there was concealment from her to the extent and value of her intended husband's property was overcome by positive evidence. Where the weight of the evidence is such as to

518

charge the intended wife with knowledge of the nature, extent and value of her intended husband's property at the time an ante-nuptial agreement is executed, her bill to set aside the agreement will be dismissed for want of equity. (*Kuhnen* v. *Kuhnen, supra.*) The same rule is applicable and the same judgment is required where the attempt is to set aside conveyances made in pursuance of an antenuptial agreement.

The evidence is voluminous and it is unnecessary to review it except as we have done so in connection with the discussion of the legal questions presented. Other questions presented by the briefs do not require consideration.

The death of Annie Roach, one of the appellants, has been suggested, and judgment will therefore be entered as of the date of the submission of this cause.

The decree of the circuit court is reversed and the cause is remanded, with directions to dismiss the bill and amended bill for the want of equity.

*Reversed and remanded, with directions.*

FARTHING and SHAW, JJ., dissenting.