(No. 24472.—

Martha Kosakowski, Appellant, *vs.* Walter Bagdon, Appellee.

*Opinion filed June 20, 1938—Rehearing denied October 5, 1938.*

Farthing, J., dissenting.

CHARLES C. SPENCER, and RICHARD M. SPENCER, for appellant.

GERALD C. SNYDER, (LEWIS D. CLARKE, of counsel,) for appellee.

Mr. JUSTICE ORR delivered the opinion of the court.

Martha Kosakowski, by her amended complaint in equity in the circuit court of Lake county, sought to set aside a deed given by her mother, Eleanor Kosakowski, to Walter Bagdon, her mother's second husband, and to recover her share of her mother's estate. She claimed that the deed was procured by the exercise of undue influence upon her mother by Bagdon while they were engaged to be married. Bagdon's answer denied generally the allegations of the complaint, but did not deny that they were engaged to marry at the time the deed was executed and delivered to him. His counter-claim also asserted a valuable consideration of $4500 was paid to his fiancé prior to the conveyance. The master found the issues for appellant and recommended a decree in her favor, but the chancellor set aside the master's recommendation and entered a decree dismissing the complaint for want of equity. Because a freehold is involved, the appeal has been brought directly to this court.

On August 8, 1932, a check for $6898.08 was received by appellant and her mother, as a result of a suit for damages on account of the death of the appellant's father. Approximately $2300 of this sum went to the mother, who for some six months previously had been engaged to marry Bagdon. On August 17, 1932, before her marriage to him, Mrs. Kosakowski conveyed the residence property in question, valued at $5800, to Bagdon, for the stated consideration of $10. Appellant's mother and Bagdon were married

ten days later, August 27, 1932, and lived together until the mother's death, May 14, 1933, leaving appellant and appellee as her only heirs. The bill alleged that upon her mother's death, appellant became seized in fee of the real estate, subject to Bagdon's statutory rights as surviving spouse.

The questions are: (1) Whether the undisputed evidence that Mrs. Kosakowski conveyed the property to Bagdon, during the existence between them of an engagement to marry, for a nominal consideration of $10, was sufficient to place the burden of proof on Bagdon to show the fairness of the transaction; and, if so, (2) whether such proof was made by him.

The law seems well settled in this State that where relations of trust and confidence exist between parties to a transaction and the party receiving the transfer is thereby benefited, the court will indulge in the presumption that the party making the transfer was unduly influenced, and such presumption will prevail until it is rebutted by the party benefited. (*Dowie* v. *Driscoll*, 203 Ill. 480, and many cases cited.) Courts of equity have carefully refrained from defining the particular instances of fiduciary relations in such manner that other and perhaps new cases might be excluded. An overwhelming weight of authority sustains the principle and extends it to every possible case in which a fiduciary relation exists as a fact, in which there is confidence reposed on one side and the resulting superiority and influence on the other. (*Beach* v. *Wilton*, 244 Ill. 413.) The doctrine repeatedly announced is that courts of equity "will scrutinize with the most jealous vigilance" transactions between parties occupying fiduciary relations toward each other, (*Casey* v. *Casey*, 14 Ill. 112,) and that the burden of proof is on the beneficiary, in such a case, to establish the fairness of the transaction, and to show that it did not proceed from undue influence. (*Jennings* v. *McConnel*, 17 Ill. 148; *Zeigler* v. *Hughes*, 55 id. 288; *Ward* v. *Armstrong*, 84 id. 151;

*Wickiser* v. *Cook,* 85 id. 68.) Where a fiduciary relation exists, the person obtaining the advantage must "vindicate the bargain or gift from any shadow of suspicion" and "show that it was perfectly fair and reasonable in every respect." (*Jones* v. *Lloyd,* 117 Ill. 597.) We have often held that where a fiduciary relation exists and gives cause for suspicion, it is not necessary to prove actual fraud in order to vitiate a questioned action. *Mors* v. *Peterson,* 261 Ill. 532; *Witkowsky* v. *Affeld,* 283 id. 557; *Feeney* v. *Runyan,* 316 id. 246; *Duncan* v. *Dazey,* 318 id. 500; *McCord* v. *Roberts,* 334 id. 233; *Eichhorst* v. *Eichhorst,* 338 id. 185.

The circumstances here do not involve an antenuptial contract to do something of financial benefit to one of the parties after marriage, but, of equal or greater significance in the present case, they involve an antenuptial transaction carried into effect before marriage, by which one of the parties may have benefited at the expense of the other. Such relation between the parties to a marriage engagement is a confidential and fiduciary one, requiring just and fair dealing. (*Mann* v. *Mann,* 270 Ill. 83.) If an engagement to marry exists and is proved, that fact creates a confidential relation between the parties. (*Yockey* v. *Marion,* 269 Ill. 342; *Debolt* v. *Blackburn,* 328 id. 420; *Geiger* v. *Merle,* 360 id. 497.) In the recent case of *Megginson* v. *Megginson,* 367 Ill. 168, we said: "Megginson and plaintiff were engaged to be married at the time the contract was signed. A confidential relationship, therefore, existed between them and they were bound to act fairly and in good faith in their dealings with each other." The evidence is undisputed that Mrs. Kosakowski and Bagdon were engaged to marry each other at the time she made the deed, and they had been so engaged for many months. From the authorities cited, it seems clear that at the time the deed was executed and delivered, a fiduciary and confidential relationship existed between them. The burden, therefore, rested upon Bagdon to show clearly and conclusively that he acted in good faith

and did not betray the confidence reposed in him. *Suchy* v. *Hajicek,* 364 Ill. 502.

The record shows that appellant's mother received the money on account of her first husband's death on August 8, 1932; she made the deed to Bagdon nine days later, August 17, and ten days following this, August 27, they were married. Appellant testified that on receipt of the $2300 above mentioned, her mother, on August 12, 1932, paid the balance due of $500 on a second mortgage against the real estate in question. She further stated that she left her mother's home two days after the latter's marriage. There is no showing as to what became of the remaining $1800 which her mother had received less than three weeks before her marriage. Bagdon said he did not receive any part of it. Evidence was produced to show that appellant's mother did not have any money or bank account when she died. In explanation of the deed, Bagdon offered testimony to the effect that he paid $3200 cash, canceled an indebtedness of $1300 owing to him by his fiancé, and assumed a $2000 mortgage as further consideration for the property conveyed to him. Two witnesses testified that Mrs. Kosakowski went unaccompanied to a real estate man named Schwartz and that, at her direction, the latter prepared the deed which she executed. She did not request any advice of Schwartz and received none, and he did not know nor was he informed of the identity of the grantee or any of the other details. The witness, Sutkus, testified he told her not to deliver the deed before she got her money and that she later told him she had received payment. He did not discuss the propriety of the transaction with her or advise her in any other particular. There was also testimony from other witnesses that, after her marriage, Mrs. Bagdon had made statements to the effect that she was glad the property was sold and that she was satisfied with the transaction. No proof was produced to show that she asked any one for advice as to whether the making of the conveyance was

a good or bad thing for her, and no competent or independent advice of that character was given to her. She was forty, and her husband forty-two, years old when they were married. She was employed at a laundry where she continued to work until her death in May, 1933, while he, for many years, had been an intermittent employee at a steel mill, where, in 1931, the year before this marriage, he had earned only about $300. He was employed as an attendant at a veteran's hospital when they were married.

The $4500 which Bagdon claims he paid to his intended wife for the property consisted, he said, of $3200, cash in hand, and $1300 by way of cancelation of her notes for money borrowed from him during the preceding six months. He produced no canceled checks or other evidence to show his withdrawal of the $3200 from any bank nor did he produce the canceled notes for the $1300 he said he had loaned to her. Neither did he offer any explanation of Mrs. Kosakowski's borrowing of over $200 a month from him during the six months preceding their marriage while she was working in a laundry for $15 per week. No record was produced to verify any of these alleged payments or loans, or to show what, if anything, was done with the $3200 after its alleged receipt by Mrs. Kosakowski. The various amounts of $1300 allegedly borrowed from Bagdon, her approximate $400 laundry wages, the $3200 cash allegedly paid by Bagdon for her property and the remainder of $1800 damages received by her for her first husband's death, would make a total of $6700 cash received by her during the comparatively short period of six months before her marriage, if Bagdon's story of his $4500 payments is believed. No evidence of any kind was offered or produced by Bagdon as to the disposition of any of this money by his wife, nor did he make any endeavor to account for its disappearance. His wife was dead, and the testimony of several witnesses concerning alleged oral conversations with her relative to the amount Bagdon had paid her is entitled to

little, if any, weight. Testimony of this character must be received with caution and is dangerous because it is liable to abuse. *Bragg* v. *Geddes,* 93 Ill. 39; *Laurence* v. *Laurence,* 164 id. 367; *Moreen* v. *Estate of Carlson,* 365 id. 482.

In our judgment, Bagdon has failed in his burden of establishing, by a clear preponderance of the evidence, that he paid his intended wife the sum of $4500 for her property. The intimate facts and details concerning the money were all peculiarly and solely within his knowledge after the death of his wife. Even if the entire transaction was for cash, this did not relieve him of the burden of showing sufficient financial ability of his own to raise $4500 in cash, and enough details of the subsequent disposal of this money to lend credence to his story and thus remove the doubt that he may have taken advantage of the confidential relationship existing during the period of courtship prior to his marriage. The entire testimony of adequate consideration paid for the property is neither clear nor convincing. The master, who saw and heard the witnesses testify, found for appellant. The chancellor, without hearing any evidence, sustained exceptions to the master's finding of facts and entered a decree for appellee, Bagdon. While the rule is that the master's findings on controverted facts do not carry the weight of a jury verdict in a suit where trial by jury is a matter of right, yet such findings are advisory (*Stasch* v. *Stasch,* 355 Ill. 581) and thus are entitled to much consideration. The chancellor, in this case, had no better opportunity to judge the credibility of witnesses than has this court on appeal, and all the facts are open for our consideration. (*Stasch* v. *Stasch, supra; Thatcher* v. *Kramer,* 347 Ill. 601.) After an examination of the record, we are satisfied that the equities here, as found by the master, are with appellant, and that the trial court erred in dismissing her amended bill for want of equity.

The decree of the circuit court is reversed and the cause is remanded, with directions to enter a decree setting aside,

as null and void, the deed from Eleanor Kosakowski to Walter Bagdon, dated August 17, 1932, and to enter such further decree as to the personal property of Eleanor Kosakowski, deceased, as to the court may seem proper.

*Reversed and remanded, with directions.*

Mr. Justice Farthing, dissenting:

The principal contention of the appellant is that she made a *prima facie* case by introducing in evidence proof of the execution of the deed during the existence of an engagement to marry, and that no further proof was necessary until appellee overcame the presumption of undue influence thus raised. The majority opinion sustains her position, but it seems to me that appellant should have further shown that appellee was the dominant party to the transaction in order to complete her *prima facie* case. In *Mahan v. Schroeder,* 236 Ill. 392, notes and mortgages, properly endorsed and assigned by Maria Schroeder to her husband, Herman Schroeder, were in his possession at the time of her death. We said that the presumption was that he owned them, although it was insisted that he was trustee *ex maleficio.* Reliance was placed on the presumption arising from the existence of a fiduciary relation where the gift is from the dependent to the dominant party, and it was contended that the existence of the relation of husband and wife cast upon the husband, or those claiming through him, the burden to prove that the transaction was free of undue influence. We denied this contention and said that although confidential relations necessarily exist between husband and wife, it is a question of fact as to which is the dominant party. See, also, *Scully v. Wilhelm,* 368 Ill. 573. The authorities relied on by appellant are all inapplicable. They fall into two groups. In the first are cases like *Suchy v. Hajicek,* 364 Ill. 502, *Hensan v. Cooksey,* 237 id. 620, and *Beach v. Wilton,* 244 id. 413, where the evidence clearly established a fiduciary relationship by reason of the kinship

of the parties, the disparity in their ages and physical condition, and the abuse of confidence by the dominant party. The question of what constitutes a *prima facie* case was neither presented nor passed upon. The second group of cases relied on by appellant are those involving ante-nuptial contracts, as in *Geiger* v. *Merle,* 360 Ill. 497, *Debolt* v. *Blackburn,* 328 id. 420, and *Yockey* v. *Marion,* 269 id. 342. They hold that one seeking to enforce an ante-nuptial contract entered into during an engagement to marry, must show that a fair disclosure of the property of the intended husband was made at the time it was entered into. In *Geiger* v. *Merle, supra,* we said, (p. 315,) that if the provision is so small as to be disproportionate to the extent and value of the intended husband's estate, the presumption is raised of an intentional concealment of the extent of his estate, and the burden is on those asserting the validity of the contract to prove that it was fairly entered into. So, even in this class of cases, the presumption of fraud is not raised by mere proof of the execution of the ante-nuptial contract, but some evidence is required showing concealment or an inadequate provision for the wife, before a presumption of fraud or undue influence arises. Transactions such as the one here involved should be closely scrutinized in equity, because of the opportunities for fraud and over-reaching, but if the only showing made is that a man received a conveyance of property from his fiancé, the law does not raise a presumption of fraud from that alone. She could lawfully give him her property, and her heirs could not be heard to complain, if the gift were voluntarily and understandingly made. See, also, *Brenneman* v. *Dillon,* 296 Ill. 140.